**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SANTOSH CHERIAN, on behalf of himself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>MANIPAL EDUCATION AMERICAS, LLC, and AMERICAN UNIVERSITY OF ANTIGUA INC.,<br><br>　　　　　　　Defendants. | Case No. 1:24-cv-00404-JLR<br><br>Judge Jennifer L. Rochon<br><br>**PLAINTIFF'S UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ................................................................................... 2

    a.   Defendant's Business ......................................................................................... 2

    b.   The Security Incident ......................................................................................... 2

    c.   Procedural History ............................................................................................. 3

    d.   Settlement Terms................................................................................................ 4

        i.    The Settlement Class........................................................................................ 4

        ii.   Settlement Benefits ......................................................................................... 4

            1.    Compensation for Documented Ordinary Losses and Attested Lost Time................. 4

            2.    Compensation for Documented Extraordinary Losses ................................. 5

            3.    Credit Monitoring Protections ...................................................................... 5

            4.    Alternative Cash Payment.............................................................................. 6

            5.    Remedial Measures ........................................................................................ 6

            6.    Costs of Notice and Settlement Administration, Attorneys' Fees, Costs, and
                  Expenses, and Service Awards...................................................................... 6

        iii.  Notice to Class Members ................................................................................ 6

        iv.   Claims, Objections, Opt-Outs, and Termination............................................ 7

        v.    Release ............................................................................................................ 9

    III.  LEGAL STANDARD ......................................................................................... 9

IV.     ARGUMENT........................................................................................................ 10

    a.   The Settlement Satisfies the Criteria for Preliminary Approval ....................... 10

    i.   The Settlement Warrants Preliminary Approval Under Rule 23(e). ............... 11

        1.    The Plaintiff and Settlement Class Counsel have adequately represented the
              Settlement Class.............................................................................................. 11

        2.    The Settlement is the product of serious, informed, and arm's-length negotiations. 12

      3.     The Settlement has no obvious deficiencies and does not grant preferential treatment to any Class Members. ................................................................. 13

      4.     The Settlement Treats Class Members Equitably to Each Other. ............................ 17

    ii.   *Grinnell* Factors .................................................................. 17

b.    Preliminary Certification of the Settlement Class is Appropriate ................................ 19

   i.   The Settlement Class satisfies the requirements of Rule 23(a) ................................... 20

     1.     Numerosity ................................................................................. 20

     2.     Commonality ................................................................................ 21

     **3.**     **Typicality** ................................................................................ 21

     **4.**     **Adequacy** ................................................................................ 22

   ii.   The Settlement Class satisfies the requirements of Rule 23(b). ................................. 23

     1.     Predominance ................................................................................ 23

     2.     Superiority ................................................................................ 24

c.    The Court Should Approve the Proposed Notice Program. ................................ 24

d.    The Court Should Appoint the Settlement Administrator. ................................ 26

e.    The Court Should Appoint the Class Representative. ................................ 26

f.    The Court Should Appoint Settlement Class Counsel. ................................ 26

V.    CONCLUSION ................................................................................ 26

# TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*,
    464 F.3d 328 (2d Cir. 2006) ................................................................................................ 25

*Alcantara v. CNA Mgmt., Inc.*,
    264 F.R.D. 61 (S.D.N.Y. Dec. 8, 2009) .............................................................................. 20

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................... 20, 22, 23, 24

*Bolanos v. Norwegian Cruise Lines Ltd.*,
    212 F.R.D. 144 (S.D.N.Y. Nov. 26, 2002) ..................................................................... 22, 23

*Castagna v. Madison Square Garden,*
    *L.P.*, No. 09-cv- 10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011).. 12,
    18

*Charron v. Pinnacle Group N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) ................................................................................ 25

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).................................................................. ii, 11, 14, 17, 19

*Cohen v. J.P. Morgan Chase & Co.*,
    262 F.R.D. 153 (E.D.N.Y 2009) ...................................................................... 9, 11, 23

*Corra v. ACTS Ret. Servs.*,
    No. 22-2917, 2024 U.S. Dist. LEXIS 500 (E.D. Pa. Jan. 2, 2024)......................................... 14

*Cotter v. Checkers Drive-In Rests., Inc.*,
    No. 8:19-cv-1386-VMC-CPT, 2021 U.S. Dist. LEXIS 160592 (M.D. Fla. Aug. 25, 2021) .... 16

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2007) ................................................................................................ 12

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) .............................................................................................. 19

*Dornberger v. Metropolitan Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ....................................................................................... 16

*Fox v. Cheminova*,
    213 F.R.D. 113 (E.D.N.Y. Feb., 28, 2003).......................................................................... 23

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ................................................................. 19

*Freeland v. AT & T Corp.*,
    238 F.R.D. 130 (S.D.N.Y. Aug. 17, 2006) .................................................. 21

*Hammond v. The Bank of N.Y. Mellon Corp.*,
    No. 08 Civ. 6060 (RMB)(RLE), 2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010)..... 15

*Hapka v. CareCentrix, Inc.*,
    Case No. 2:16-cv-02372, 2018 U.S. Dist. LEXIS 68185 (D. Kan. Feb. 15, 2018) ................. 24

*Hart v. BHH, LLC*,
    No. 15cv4804, 2020 U.S. Dist. LEXIS 173634 (S.D.N.Y. Sep. 22, 2020) ............................ 16

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
    239 F.R.D. 363 (S.D.N.Y. Jan. 29, 2007) ..................................................... 20

*In re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 145 (2d Cir. 1987) ......................................................................... 23

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) ................................................. 24

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................... 12, 19

*In re Equifax, Inc. Customer Data Security Breach Litig.*,
    MDL Docket No. 2800, No. 1:17-md-2800-TWT, 2020 U.S. Dist. LEXIS 118209 (N.D. Ga.
    Mar. 17, 2020), *reversed on other grounds*, 999 F.3d 1247 (11th Cir. 2021) ........................... 20

*In re Flag Telecom Holdings, Ltd. Securities Litig.*,
    574 F.3d 29 (2d Cir. 2009) ......................................................................... 22

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................................... 12

*In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................. 20

*In re Interpublic Sec. Litig.*,
    No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ............................... 18

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969) ............................................... 18

*In re Marriott Int'l, Inc.*,
    No. 22-1744, 2023 WL 5313006 (4th Cir. Aug. 18, 2023) ..................................... 15

*In re Nasdaq Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................ 9, 11

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ............................................................................. 25

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ......................................................................... 18

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D. N.Y. 2019) ........................................................................... 10

*In re Target Corp. Customer Data Security Breach Litig.*,
   309 F.R.D. 482 (D. Minn. 2015) ........................................................................... 20

*In re TD Ameritrade Acct. Holder Litig.*,
   No. C 07-2852 SBA, 2011 U.S. Dist. LEXIS 103222 (N.D. Cal. Sept. 13, 2011) .................. 15

*In re Telik*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) .................................................................... 16

*Izzio v. Century Golf Partners Mgmt., L.P.*,
   Civil Action No. 3:14-cv-03194-M, 2019 U.S. Dist. LEXIS 226946 (N.D. Tex. Feb. 13, 2019)
   ........................................................................................................ 16

*Jackson v. Bloomberg, L.P.*,
   298 F.R.D. 152 (S.D.N.Y. Mar. 19, 2014) ............................................................. 21

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
   333 F.R.D. 314 (S.D.N.Y. 2019) .......................................................................... 17

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169 (S.D.N.Y. May 29, 2014) .......................................................... 20, 21

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2nd Cir. 1997) .......................................................................... 21, 22

*Mayhood, et al. v. Wilkins Recreational Vehicles, Inc.*,
   Index No. E2022-0701CV (Sup. Ct. NY, Steuben Cty. Oct. 17, 2023) ............................. 14

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ........................................................................................ 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................ 25

**Other Authorities**

Max Meglio, Note, *Embracing Insecurity: Harm Reduction Through a No-Fault Approach to Consumer Data Breach Litigation*,
   61 B.C. L. REV. 1223 (2020) ................................................................................................... 15

**Rules**

Federal Rule of Civil Procedure, Rule 23 ........................................... 10, 11, 13, 20, 21, 22, 23, 24

## I.    INTRODUCTION

Plaintiff Santosh Cherian, on behalf of himself and all others similarly situated, hereby respectfully requests that the Court grant preliminary approval of the parties' proposed class action settlement in this matter under Federal Rule of Civil Procedure 23.[1]

After several months of hard-fought, arm's-length negotiations, Plaintiff and Defendant Manipal Education Americas, LLC, and Defendant American University of Antigua Inc. (collectively referred to as "Defendant" or "AUA") reached a class-wide Settlement Agreement ("Settlement" or "S.A.") that is fair, adequate, and reasonable, attached hereto as **Exhibit A**. This action arises out of a Data Incident involving Defendant's network that occurred between August 30, 2023, and September 6, 2023, that may have involved Plaintiff's and the Settlement Class's Private Information. For certain Class Members, this information may have included names, Social Security number, financial account information, National Insurance numbers, and Social Insurance numbers.[2]

Under the Settlement, in exchange for a narrowly tailored release limited to the claims in this case, AUA will pay all valid and timely claims made by the approximately 4,868 Settlement Class Members for monetary compensation and credit monitoring, with Settlement Class Members eligible to make claims for: (1) up to $1,000 for reimbursement of out-of-pocket expenses incurred as a result of the Data Incident,  with third-party documentation; (2) up to $100 for reimbursement of time spent as a result of the Data Incident (up to 4 hours at $25 per hour); (3) up to $5,000 for reimbursement of extraordinary losses, like significant identity theft or fraud, with third-party documentation; (4) two years of three-bureau credit monitoring with at least $1,000,000 in identity

---

[1] Defendants Manipal Education Americas, LLC, and American University of Antigua do not oppose the relief sought in this motion and support preliminary approval of the Settlement.
[2] Capitalized terms are defined consistent with the definitions in the Settlement Agreement.

theft protection insurance; or, (5) in the alternative to (1)-(4), a $25 cash payment. Additionally, Defendant will provide a confidential declaration to Class Counsel confirming its information security improvements since the Data Incident, all of which were made at Defendant's own expense and do not diminish the relief available to the Settlement Class. Plaintiff strongly believes the Settlement is favorable to the Settlement Class and should be preliminarily approved.

## II.    STATEMENT OF FACTS

### a.    Defendant's Business

Defendant operates the American University of Antigua College of Medicine, which is a for-profit private medical school based in the Caribbean, but that is owned and operated by Defendant Manipal Education Americas, LLC, a New York based company. Doc. 1, ¶¶14-15. To operate its business, Defendant collects and stores the Personal Information of its current and former students and employees. *Id.* ¶16. Plaintiff alleges that, in so doing, Defendant agreed to take reasonable steps to safeguard that Personal Information. *Id.* ¶17.

### b.    The Security Incident

As alleged in Plaintiff's Complaint, from August 30, 2023 until September 6, 2023, Defendant's network was accessed by cybercriminals who "accessed and acquired certain files" stored by Defendant. *Id.* ¶¶21-23. The files involved in the Data Incident included those that may have contained Personal Information of Plaintiff and the Settlement Class. *Id.* ¶23. Defendant sent notice of the Data Incident on approximately November 15, 2023, warning Plaintiff and the Settlement Class to take steps to protect themselves from identity theft and fraud stemming from the Data Incident. *Id.* ¶27. Plaintiff is a former AUA student and victim of this Data Incident who received notice of the Data Incident from Defendant. *Id*. ¶¶40, 46.

c.    **Procedural History**

Following Defendant's notification to those affected by the Data Incident and a thorough investigation of the claim by Settlement Class Counsel, Plaintiff Santosh Cherian filed this class action lawsuit against AUA in this Court on January 18, 2024. Doc. 1. Plaintiff alleged that, as a result of the Data Incident, AUA was liable for negligence, breach of implied contract, unjust enrichment, breach of fiduciary duty, violation of the New York Deceptive Trade Practices Act, and for declaratory judgment. *Id*.

Recognizing the benefits of early resolution of Plaintiff's and the Class's claims, the parties began discussing the potential for early resolution shortly after defense counsel appeared in this case. Borrelli Decl., ¶6. To facilitate those discussions, Plaintiff requested, and Defendant provided, informal discovery regarding the size of the putative class,  details about the Data Incident and Defendant's response to the Data Incident, and the notice Defendant sent regarding the Data Incident. *Id.* ¶7.  With the benefit of that informal discovery and a serious evaluation of the strengths and weaknesses underlying their claims and defenses, the parties began arms-length settlement negotiations. *Id.* ¶8. While the negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients over approximately four months. *Id*. ¶9. The parties reached an agreement in principle on the material terms of the Settlement on May 30, 2024, and in the weeks that followed, the parties diligently negotiated and circulated drafts of the Settlement Agreement, along with accompanying notices, a Claim Form, and other exhibits, and agreed upon a Settlement Administrator. *Id*. ¶11. The Settlement was finalized and executed on DATE. *See* Ex. A.

### d.    Settlement Terms

### i.    The Settlement Class

The Settlement provides for the certification of the Settlement Class, defined as "All individuals residing in the United States whose PII was compromised in the Data Incident affecting Defendant that occurred on or around August 30, 2023, including all those individuals who received notice of the breach." S.A. ¶1.35. Personal Identifiable Information, or "PII" (also referred to as "Private Information") may include, but is not limited to, names, Social Security number, financial account information, National Insurance numbers, and Social Insurance numbers. *Id.* ¶1.23.

The Settlement Class excludes "i) Manipal Education Americas, LLC, and American University of Antigua Inc.; (ii) the Related Entities; (iii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iv) any judges assigned to this case and their staff and family; and (v) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge." *Id.* ¶1.35.

### ii.    Settlement Benefits

The Settlement provides Settlement Class Members with benefits. . The benefits of the Settlement are available to all Settlement Class Members, and Defendant will pay all valid and timely claims in full. *Id.* ¶3.1.

### 1.    Compensation for Documented Ordinary Losses and Attested Lost Time

Settlement Class Members are eligible to receive compensation for up to $1,000 of third-party documented ordinary out-of-pocket expenses incurred as a result of the Data Incident. *Id.* ¶3.2(a). Ordinary Losses include, but are not limited to, "unreimbursed losses relating to fraud or

identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; credit monitoring costs that were incurred on or after mailing of the notice of data breach, through the date of claim submission; and miscellaneous expenses such as fax, postage, copying, mileage." *Id.* The Settlement Administrator shall have discretion to determine whether any claimed loss is a direct result of the Data Incident and whether appropriate documentation has been provided. *Id.* ¶4.8.

Additionally, the Settlement also allows Settlement Class Members who have spent time monitoring accounts or otherwise dealing with issues as a direct result of the Data Incident to submit a claim for reimbursement for that time of $25 per hour up to 4 hours (for a total of $100), if they provide either supporting documentation or a narrative statement, under the penalty of perjury, as to how the time was spent in response to the Data Incident. *Id.* ¶3.2(b). Claims for Lost Time are subject to the $1,000 cap for Ordinary Losses. *Id.*

### 2. Compensation for Documented Extraordinary Losses

Settlement Class Members are also eligible to receive compensation for up to $5,000 of third-party documented extraordinary expenses incurred as a result of the Data Incident. *Id.* ¶3.2(c). This category of loss covers unreimbursed monetary losses caused by the Data Incident that is not covered by the Ordinary Loss category, such as significant fraud or identity theft.

### 3. Credit Monitoring Protections

In addition to the financial and temporal loss reimbursements, Settlement Class Members shall have the ability to make a claim for two years of credit monitoring services, to include credit monitoring through all three national credit reporting bureaus and with at least $1,000,000 in identity theft insurance. *Id.* ¶3.2(d). This Settlement benefit bears with it significant value and will protect Settlement Class Members from identity theft and fraud in the future.

### 4.    Alternative Cash Payment

In lieu of reimbursement for Ordinary Losses, Lost Time, Extraordinary Losses, and Credit Monitoring protection, Settlement Class Members may alternatively claim a cash payment of $25. *Id.* ¶3.3. This cash payment can be claimed without attestations or supporting documents.

### 5.    Remedial Measures

In addition to cash compensation and credit monitoring, Defendant will provide a confidential declaration to Class Counsel describing its information security improvements since the Data Incident and estimating the cost of those improvements. *Id.* ¶3.4.

### 6.    Costs of Notice and Settlement Administration, Attorneys' Fees, Costs, and Expenses, and Service Awards

The parties did not discuss or agree upon payment of attorneys' fees, costs, and expenses or Plaintiff's service award until after they agreed on all material terms of relief to the Settlement Class. Borrelli Decl. ¶10. Defendant will pay all costs of notice to the Settlement Class and costs of Settlement Administration separate from the benefits available to Settlement Class Members. S.A. ¶4.1. The parties have agreed on Simpluris as the Settlement Administrator, subject to Court approval. *Id.* ¶1.33. Defendant will also pay for Plaintiff's attorneys' fees, costs, and expenses (not to exceed $136,500.00) and service award to Plaintiff (not to exceed $2,500). *Id.* ¶¶8.1-8.2. Settlement Class Counsel will separately petition the Court for such fees, costs, and expenses at least 14 days before the Opt-Out and Objection Deadlines, unless the Court orders otherwise. *Id*. ¶8.3.

### iii.    Notice to Class Members

To notify the Settlement Class, the Settlement outlines how the Settlement Administrator, Simpluris, will collect Settlement Class Member information and distribute notice through two means. First, because Defendant has mailing addresses for many of the Settlement Class Members,

Defendant will provide Simpluris with the Settlement Class List within 10 days after the date of the Preliminary Approval Order. S.A. ¶5.3. Then, within 30 days after the date of the Preliminary Approval Order, Simpluris will disseminate the Short Form Notice via first-class U.S. Mail to the Settlement Class Members on the Settlement Class List in the form attached as Exhibit A to the Settlement Agreement. *Id*. ¶5.4. If any Notice is returned as undeliverable, Simpluris will remail the Notice to the forwarding address, if any, provided by the Postal Service. *Id.* ¶5.5. Where the undeliverable Notice is returned without a forwarding address, Simpluris will make reasonable efforts to identify a valid address and remail the Notice. *Id.*

Simpluris will also create a Settlement Website where it will post all documents relating to this case and the Settlement, including the Long Form Notice (attached to the Settlement as Exhibit B) and Claim Form (attached to the Settlement as Exhibit C), and that provided the ability to submit a claim online. *Id*. ¶¶5.7, 5.9.

### iv. Claims, Objections, Opt-Outs, and Termination

Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically via the Settlement Website or physically by mail to the Settlement Administrator. *Id.* ¶5.9. Settlement Class Members will have 90 days from the day the Settlement Administrator notifies the Settlement Class to timely submit claims. *Id*. ¶1.1. The Settlement Administrator will adjudicate all claims, with Settlement Class Members able to appeal a claim determination for review by the parties and, if unable to reach agreement, by a Claims Referee agreed on by the Parties. *Id*. ¶¶3.7, 4.7-4.8.

Settlement Class Members may opt-out from receiving the Settlement's benefits by submitting a Request for Exclusion to the Settlement Administrator no later than 60 days after the Notice Deadline. *Id*. ¶6.3. The Opt-Out Request must: (a) state his or her full name, address, and

telephone number; (b) contain the Settlement Class Member's personal and original signature (or the original signature of a person previously authorized by law, such as a trustee, guardian, or person acting under a power of attorney to act on behalf of the Settlement Class Member with respect to a claim or right, such as those in the Lawsuit); and (c) clearly manifest the Settlement Class Member's intent to be excluded from the Settlement Class, to be excluded from the Settlement, to not participate in the Settlement, and/or to waive all rights to the benefits of the Settlement. *Id.* ¶6.4. Those who submit a valid opt-out shall receive no benefits or compensation under the Settlement, shall gain no rights from the Settlement, shall not be bound by the Settlement, and shall have no right to object to the Settlement or proposed Settlement Agreement or to participate at the Final Approval Hearing. *Id.* ¶6.5

Settlement Class Members may also object to the Settlement by submitting written objections to the Settlement Administrator no later than 60 days after the Notice Deadline. *Id*. ¶7.2. The written objection must:  (i) state the objecting Settlement Class Member's full name, current address, telephone number, and email address (if any); (ii) contain the objecting Settlement Class Member's original signature; (iii) set forth information identifying the objector as a Settlement Class Member, including proof that the objector is within the Settlement Class (e.g., copy of the Notice or copy of original notice of the Data Incident); (iv) set forth a statement of all grounds for the objection, including any legal support for the objection that the objector believes applicable; (v) identify all counsel representing the objector; (vi) state whether the objector and/or his or her counsel will appear at the Final Approval Hearing, and; (vii) contain the signature of the objector's duly authorized attorney or other duly authorized representative (if any), along with documentation setting forth such representation. *Id.* ¶7.1. To be timely, an Objection must be filed with the Clerk

of the Court and mailed or hand-delivered on Settlement Class Counsel and Defendant's Counsel at addresses set forth in the Notice by the objection deadline. *Id.* ¶7.2.

### v. Release

To receive the Settlement's Benefits, Plaintiff and Settlement Class Members agree to release Defendant from all claims and causes of action asserted or that could have been asserted by any Settlement Class Member that relate to or arise from the Data Incident. *Id.* ¶1.28.

## III. LEGAL STANDARD

Federal courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual plaintiff—or the class—could hope to obtain. *See Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y 2009).

In granting preliminary approval, courts direct notice to be provided to class members, who are given the opportunity to exclude themselves from or object to the settlement. *In re Nasdaq Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). At the Final Fairness Hearing, Settlement Class Members may be heard by the court. *Id.*

Plaintiff brings this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. In weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." The Settlement here warrants preliminary approval.

## IV.    ARGUMENT

### a.    The Settlement Satisfies the Criteria for Preliminary Approval

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement, following notice to the class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992).

The court must determine whether the Settlement Agreement itself is worthy of preliminary approval and of providing notice to the class. Notice is only justified where the parties can show that the court will "likely" be able to approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(i). Thus, consideration on preliminary approval requires an initial assessment of factors to be fully considered on final approval, namely that: "(A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate[]; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, courts must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D. N.Y. 2019); Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

The Second Circuit had developed its own list of factors for consideration as well, finding preliminary approval of a proposed class action settlement is warranted where it is the result of

"serious, informed, non-collusive ("arm's length") negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies. . . and where the settlement appears to fall within the range of possible approval." *See Cohen*, 262 F.R.D. at 157; *In re Nasdaq Antitrust Litig.*, 176 F.R.D. at 102. In making this determination, Second Circuit Courts considered nine factors from *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. June 10, 2009) (citing *Grinnell Corp.*, 495 F.2d at 463 (abrogated on other grounds)). The Settlement satisfies these factors and should be preliminarily approved.

## i.    The Settlement Warrants Preliminary Approval Under Rule 23(e).

### 1.    The Plaintiff and Settlement Class Counsel have adequately represented the Settlement Class.

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representative and Settlement Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See* Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes. Here, Plaintiff has maintained contact with counsel, assisted in the investigation of the case, reviewed the Complaint, remained available for consultation throughout settlement negotiations, reviewed the Settlement Agreement, and answered counsel's many questions. Borrelli Decl. ¶4. Plaintiff does not have any conflicts with the Settlement Class. *Id*. Settlement Class Counsel has also adequately represented the class. As discussed below, Settlement Class

Counsel has extensive experience in class action litigation generally, and data breach cases in particular. *See* Borrelli Decl., Ex. A.

Although formal discovery had not been completed prior to reaching the Settlement, such discovery is not required for a settlement to be adequate. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2007) (finding "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv- 10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218, *16 (S.D.N.Y. June 7, 2011) (approving settlement where no formal discovery had taken place but the parties had "completed enough investigation to agree on a reasonable settlement) (citation omitted). Here, Settlement Class Counsel carried out a thorough investigation of the claims, and settlement negotiations included a significant informal exchange of information in advance of arm's length negotiations, allowing both Parties to evaluate the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. Borrelli Decl. ¶¶6-9. This factor weighs in favor of preliminary approval.

### 2. The Settlement is the product of serious, informed, and arm's-length negotiations.

Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that "the proposal was negotiated at arm's length." If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2007)); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019).

This Settlement is the result of a thorough investigation and arm's-length negotiations involving attorneys experienced in class actions and claims regarding data breaches. *See Ortiz v.*

*Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ("[O]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining."). The Settlement is the result of arm's length negotiation among experienced counsel. Borrelli Decl. ¶¶6-9. Early in this case, the Parties agreed to explore settlement and engaged in Federal Rule of Evidence 408 communication. *Id.* ¶6. During this time, the parties exchanged key information needed to inform their strategies, including the size of the class, the types of data involved in the breach, Defendant's discovery of and response to the Data Incident, and the notice provided as a result of the Data Incident. *Id.* ¶7 The parties were subsequently able to make significant progress negotiating a term sheet, communicating their positions and evaluating the strengths and weaknesses underlying their claims and defenses. *Id.* ¶8.

Throughout all negotiations, Settlement Class Counsel and counsel for Defendant fought hard for the interests of their respective clients. *Id.* Settlement Class Counsel has extensive experience litigating consumer cases, including class actions involving data breaches, and is confident that the relief provided by the Settlement meets, and even exceeds, what has been achieved in similar litigation. Borrelli Decl. ¶¶16, 19-23, and Exhibit A. These factors favor preliminary approval.

### 3.    The Settlement has no obvious deficiencies and does not grant preferential treatment to any Class Members.

Fed. R. Civ. P. 23(e)(2)(c) requires examination of the relief provided by the Settlement. The benefits made available to Class Members as a result of this Settlement are significant in comparison to the risk of obtaining no recovery after continued litigation. This Settlement ensures that Settlement Class Members will be compensated for their out-of-pocket costs and  time, that they will be protected from future identity theft, and ensures that even those who have not yet

experienced harm have the option to claim cash benefits. S.A. ¶¶3.2-3.3  This recovery ensures that every Settlement Class Member that submits a valid claim will receive adequate compensation for the harms, if any, that they have suffered as a result of the Data Incident.

This is a "small" settlement class when compared to other data breach cases, yet Plaintiff delivered relief that meets or exceeds results reached in other *See e.g., Mayhood, et al. v. Wilkins Recreational Vehicles, Inc.*, Index No. E2022-0701CV, NYSCEF Doc. No. 39 (Sup. Ct. NY, Steuben Cty. Oct. 17, 2023) (preliminarily approving settlement of a class of 17,408 people with a cap of $250,000 providing up to $200 in out-of-pocket expenses, $2,500 in extraordinary losses, up to $75 for lost time, and up to two years of credit monitoring); *Corra v. ACTS Ret. Servs.*, No. 22-2917, 2024 U.S. Dist. LEXIS 500 (E.D. Pa. Jan. 2, 2024) (preliminary approving data breach settlement on behalf of 20,754 class members with a $350,000 cap on monetary claims that provided up to $3,500 for extraordinary losses, up to $350 in ordinary out-of-pocket losses, up to $75 in lost time, and two years of credit monitoring).

As the relief provided is well within the range of possible approval when considered in light of the Rule 23(e)(2)(c)(i)-(iv) factors, preliminary approval should be granted.

### a.   The costs, risks, and delay of trial and appeal are great.

The benefits conferred by the Settlement are immediate and significant, and Settlement Class Counsel acknowledges that it is possible that the Class could receive nothing if the case is litigated to trial. Borrelli Decl. ¶15. While Plaintiff strongly believes in the merits of the case, they also understand that Defendant will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open up Plaintiff to the risk inherent in trying to achieve and maintain class certification, and prove liability—both factors considered under the test for final approval established by *Grinnell*.

For example, although plaintiffs around the country have often survived motions to dismiss in data breach cases, winning class certification and an eventual jury verdict is far from certain. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.,* No. 08 Civ. 6060 (RMB)(RLE), 2010 U.S. Dist. LEXIS 71996, at *4-5 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage); *In re TD Ameritrade Acct. Holder Litig.*, No. C 07-2852 SBA, 2011 U.S. Dist. LEXIS 103222, at *13 (N.D. Cal. Sept. 13, 2011); *In re Marriott Int'l, Inc.*, No. 22-1744, 2023 WL 5313006, at *1 (4th Cir. Aug. 18, 2023) (reversing order granting class certification in a data breach case).

Plaintiff also recognizes the difficulties in establishing liability through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here. To the best of Settlement Class Counsel's knowledge, "no data breach case has gone to trial." Max Meglio, Note, *Embracing Insecurity: Harm Reduction Through a No-Fault Approach to Consumer Data Breach Litigation*, 61 B.C. L. REV. 1223, 1235 (2020). As such, a trial on the merits would be truly uncharted territory, making the risks difficult to fully evaluate by any party. Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

### b. The proposed method of distributing relief and processing claims is objective, efficient, and fair.

As described in detail *supra*, the Settlement Administrator will be responsible for assessing claims and distributing relief. Settlement Class Members will have 90 days after the Notice Deadline to complete and submit a claim form. *Id*. ¶1.1. The Settlement Administrator will be responsible for evaluating the claims and the evidence submitted, requesting additional documentation and/or information where the claim form is insufficient, and awarding funds. *Id*. ¶¶4.7-4.8. This procedure is objective, efficient, and fair.

      **c.**     **The attorneys' fees, costs, and expenses, as well as the service award that Plaintiff will request from this Court are reasonable.**

By separate motion, Plaintiff will seek Court approval of attorneys' fees, costs, and expenses in the amount of $136,500.00, and a service award for Plaintiff in the amount of $2,500.00. S.A. ¶¶8.1-8.2. District courts, in approving fee requests in class actions, generally consider the amount "made available" to class members. *Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386-VMC-CPT, 2021 U.S. Dist. LEXIS 160592, at *33 (M.D. Fla. Aug. 25, 2021) (measuring a $575,000 fee request against the $20 million "made available"—but not paid—to the class); *Izzio v. Century Golf Partners Mgmt., L.P.*, Civil Action No. 3:14-cv-03194-M, 2019 U.S. Dist. LEXIS 226946, at *11 (N.D. Tex. Feb. 13, 2019) (awarding counsel 25% from a "common fund" that returned "unclaimed awards" to the defendant).

The attorneys' fees and costs and the service award requested here are consistent with those regularly accepted by Second Circuit courts. *See Hart v. BHH, LLC*, No. 15cv4804, 2020 U.S. Dist. LEXIS 173634, at *30 (S.D.N.Y. Sep. 22, 2020) (in a claims based class settlement, awarding 51.75% of the total benefit to the class as attorneys' fees); *In re Telik*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("[i]n contingent litigation, lodestar multiples of over 4 are routinely awarded by courts") (citation omitted); *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting in class actions representative plaintiff awards from $2,500 to $85,000 are commonly accepted). Plaintiff will make his request by separate motion at least 14 days prior to Settlement Class Members' deadline to Object to or Out-Out from the Settlement. S.A. ¶8.3. The attorneys' fees, costs, and service awards sought clearly fall within the range of possible approval.

       **d.**     **No additional agreement related to the Settlement Exist.**

There are no additional agreements that require identification and/or examination under Rule 23€(3).

       **4.**     **The Settlement Treats Class Members Equitably to Each Other.**

Further, the Settlement treats all Settlement Class members fairly and equally. Each Settlement Class member is entitled to file a claim to obtain settlement benefits. Accordingly, and because the Settlement Agreement meets all of the required criteria under Rule 23(e), preliminary approval should be granted.

       **ii.**     ***Grinnell* Factors**

While preliminary approval requires only an initial evaluation of the settlement and Rule 23 has been since amended, the *Grinnell* factors remain instructive and have been used by Second Circuit courts in evaluating settlements even after 2018. *See Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 320 (S.D.N.Y. 2019) (considering both the Rule 23 and *Grinnell* factors on consideration of a motion for preliminary approval).

**First,** the complexity, expense, and likely duration of the litigation support preliminary approval. As discussed *supra*, continued litigation is likely to be complex, long, and expensive. Had the parties not reached an early resolution of Plaintiff's claims, Defendant would likely have moved to dismiss the Complaint, and, while Plaintiff is confident in his claims, it is not assured that this case would proceed past the pleading stage. Plaintiff would then likely need to prevail on summary judgment, and both gain and maintain class certification through appeal and trial. Additionally, the amount of expert analysis and testimony needed to bring this case to trial would increase costs significantly. This factor weighs in favor of approval.

**Second,** the reaction of class members is not yet apparent. While the Settlement Class Representative has reviewed and approved the Settlement Agreement, other Settlement Class Members have not yet had the same opportunity. As such, this factor is appropriately examined after Notice has issued to Settlement Class Members.

**Third,** the stage of the proceedings and the amount of discovery completed supports settlement approval. While the case is early in litigation, the Parties' negotiations included an exchange of information sufficient to allow both Parties to assess the claims and defenses at issue. Early settlement where the Parties are adequately informed to negotiate is to be commended. *Castagna*, 2011 U.S. Dist. LEXIS 64218, at *30-31 (commending plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours of legal fees); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case).

**Fourth, Fifth, and Sixth,** the risks of establishing liability, damages, and maintaining a class through appeal and trial weigh in favor of Settlement approval. Although Plaintiff firmly believes in the merits of the case, litigating in such an evolving area of law involves significant risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Id.* (quoting *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)). While Plaintiff remains confident in the strength of his claims, additional litigation leaves open significant risk of no recovery at all. Thus, these factors weigh in favor of Settlement approval.

**Seventh,** the ability of Defendant to withstand a greater judgment is not at issue here. In fact, even if Defendant could withstand a greater judgment, its ability to do so, "standing alone,

18

does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

**Eighth and Ninth,** the Settlement provides for substantial relief for the Settlement Class, especially in light of all attendant risks of litigation. The Settlement provides for: (1) up to $1,000 for reimbursement of out-of-pocket expenses incurred as a result of the Data Incident, with third-party documentation; (2) up to $100 for reimbursement of time spent as a result of the Data Incident (up to 4 hours at $25 per hour); (3) up to $5,000 for reimbursement of extraordinary losses, like significant identity theft or fraud, with third-party documentation; (4) two years of three-bureau credit monitoring with at least $1,000,000 in identity theft protection insurance, or; (5) in the alternative to (1)-(4), a $25 cash payment. S.A. ¶¶3.2-3.3. It further provides assurances that Defendant has taken steps to protect Plaintiff's and the Settlement Class's PII moving forward. *Id.* ¶3.4. The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. Again, while Plaintiff strongly believes in the merits of his case, he also understands that Defendant will assert a number of potentially case-dispositive defenses. Through the Settlement, Plaintiff and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

The *Grinnell* factors weigh in favor of approval of the Settlement.

**b.    Preliminary Certification of the Settlement Class is Appropriate**

"Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding in part that "the District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review");

*see also Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. May 29, 2014). Those factors are satisfied here.

Compared to a traditional certification analysis of a class that is not settled, the Court here undertakes a different analysis when certifying a class action that is settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court's review, in certain aspects, of a settlement-only class certification motion is lessened—without a trial, the case management issues need not be confronted. *Id.*

Indeed, courts have been certifying similar nationwide classes in data breach cases. *See, e.g., In re Equifax, Inc. Customer Data Security Breach Litig.*, MDL Docket No. 2800, No. 1:17-md-2800-TWT, 2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020), *reversed on other grounds*, 999 F.3d 1247, 1274-75 (11th Cir. 2021); *In re Target Corp. Customer Data Security Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). Because the Settlement Class meets all requirements for certification under Rule 23, this Court should grant Plaintiff's request.

### i.    The Settlement Class satisfies the requirements of Rule 23(a).

### 1.    Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While there is no numerical requirement for satisfying the numerosity requirement, forty class members generally satisfies the numerosity requirement. *See Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61, 64 (S.D.N.Y. Dec. 8, 2009); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. Jan. 29, 2007). Here, there are approximately 4.868 individuals who are part of the Settlement Class. This renders joinder impracticable.

### 2.    Commonality

Commonality requires Plaintiff to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high—commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and capable of generating common answers even where the individuals are not identically situated. *Lizondro-Garcia*, 300 F.R.D. at 175 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A plaintiff may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377 (per curiam). "Even a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162, (S.D.N.Y. Mar. 19, 2014) (quoting *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006)).

Here, the commonality requirement is met because Plaintiff can demonstrate numerous common issues exist. For example, whether AUA failed to adequately safeguard the records of its current and former students and employees who entrusted Defendant with their Private Information is a question common across the entire Class. Defendant's data security safeguards were common across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another. These common questions, and others alleged in the Complaint (*see* Doc. 1 at ¶89), are central to the causes of action brought here, will generate common answers, and can be addressed on a class wide basis.

### 3.    Typicality

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole."

Fed. R. Civ. P. 23(a)(3); *see also In re Flag Telecom Holdings, Ltd. Securities Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. Nov. 26, 2002). The crux of the typicality requirement is to ensure that "maintenance of a class action is economical and [that] the named Plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997).

Here, Plaintiff's and Settlement Class Members' claims all stem from the same event—the Data Incident at issue in the Complaint—and the cybersecurity protocols that Defendant had (or did not have) in place to protect Plaintiff's and Settlement Class Members' data.

### 4.    Adequacy

A representative plaintiff must be able to provide fair and adequate representation for the class. To satisfy the adequacy of representation requirement, plaintiff must establish that: (1) the there is no conflict of interest between the class representative and other members of the class; and (2) the plaintiff's counsel is qualified, experienced, and generally able to conduct the litigation. *Bolanos*, 212 F.R.D. at 156 (quoting *Marisol A.*, 126 F.3d at 378); *see also Amchem*, 521 U.S. at 624.

Here, Plaintiff's interests are aligned with those of the Settlement Class in that he seeks relief for injuries arising out of the same Data Incident. Plaintiff's and Settlement Class Members' data was all allegedly compromised by Defendant in the same manner. Under the terms of the Settlement Agreement, Plaintiff and Settlement Class Members will all be eligible for credit monitoring and monetary relief.

Moreover, counsel for Plaintiff has years of experience as vigorous class action litigators and are well suited to advocate on behalf of the Settlement Class. *See* Borrelli Decl. ¶¶19-23, and Ex. A. Thus, the requirements of Rule 23(a) are satisfied.

### ii.    The Settlement Class satisfies the requirements of Rule 23(b).

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry is two-fold.

### 1.    Predominance

To show that common issues predominate, Plaintiff must demonstrate that common questions of law or fact relating to the class predominate over any individualized issues. *Bolanos*, 212 F.R.D. at 157. This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance requirement is met when the defendant's wrongful acts involve common practices, or when the defendant has a common defense. *Fox v. Cheminova*, 213 F.R.D. 113, 130 (E.D.N.Y. Feb., 28, 2003) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-167 (2d Cir. 1987)). Commonality is regularly met in cases where the focus is on the conduct of a defendant rather than that of individual plaintiff. *Cohen*, 262 F.R.D. at 159.

In this case, the key predominating questions are whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiff and Settlement Class Members, and whether Defendant breached that duty. These common questions predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g.,*

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312-315 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information"); *see also Hapka v. CareCentrix, Inc.*, Case No. 2:16-cv-02372, 2018 U.S. Dist. LEXIS 68185, at *7 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"). Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of hundreds of claims in one action is far superior to individual lawsuits. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

### 2.    Superiority

Second, the resolution of hundreds of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating hundreds of data breach cases arising out of the same Data Incident. A class action is therefore the superior vehicle by which to resolve these issues.

### c.    The Court Should Approve the Proposed Notice Program.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. Fed. R. Civ. P. 23(e). For classes, like this one, certified under Rule 23(b)(3), the parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

reasonable effort." *Id*. 23(c)(2)(B). Rule 23(c)(2)(B) specifically permits notice to be sent by "U.S. Mail, electronic mail, or other appropriate means." The Notice Plan negotiated here is the best practicable. The Notice plan calls for Notice to issue via U.S. mail to the addresses Defendant has on record. *See* S.A. ¶¶5.2-5.3. Additionally, Simpluris will establish a Settlement Website that provides access to relevant case documents and the Settlement Agreement and that provides access to a Claim Form that can be submitted online. *Id.* ¶¶5.7, 5.9.

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113–14 (2d Cir. 2005). Second Circuit courts have explained that a Rule 23 Notice will satisfy due process where it describes the terms of the settlement generally and informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (internal citations omitted). The notice must also "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 338 (2d Cir. 2006).

The substance of the Notice here is designed to be clear and concise and inform Settlement Class Members of the general terms of the Settlement, the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing. See S.A. Exs. A and B. As such, the proposed Notice Plan should be approved.

      **d.**      **The Court Should Appoint the Settlement Administrator.**

In connection with the notice plan and settlement administration, the Parties request that the Court appoint Simpluris to serve as the Settlement Administrator. Simpluris has a trusted and proven track record of supporting hundreds of class action administrations, with vast legal administration experience. *See* Borrelli Decl. ¶11.

      **e.**      **The Court Should Appoint the Class Representative.**

Plaintiff should be provisionally appointed Class Representative. As set forth above, he has represented the Settlement Class with no conflict of interest or antagonism between himself and other members of the class. His Private Information, like the Private Information of the Settlement Class Members, has been impacted in the same Security Incident, and, as a result, Plaintiff has the same interests as the Settlement Class Members. *See* Borrelli Decl. ¶4. Moreover, Plaintiff has capably represented the class—assisting in the investigation of the case, reviewing and approving pleadings, maintaining contact with Settlement Class Counsel, and answering Settlement Class Counsel's many questions. *Id*.

      **f.**      **The Court Should Appoint Settlement Class Counsel.**

Plaintiff requests appointment of Raina C. Borrelli of Strauss Borrelli PLLC as Settlement Class Counsel. Settlement Class Counsel has extensive experience prosecuting class actions and other complex cases, and in particular, data breach cases. *See* Borrelli Decl. ¶¶19-23, Ex. A.

## V.      CONCLUSION

The Settlement readily meets the standard for preliminary approval. Plaintiff respectfully requests that this Honorable Court enter an Order: 1) Preliminarily approving the Settlement in accordance with the Proposed Order Granting Preliminary Approval of Class Action Settlement (Ex. C to the Settlement Agreement); 2) Directing that Notice be disseminated to the Settlement

Class Members in accordance with the Notice Program; 3) Appointing Simpluris as Settlement Administrator; 4) Approving the form and content of the Short Form Notice (Ex. A), Long Form Notice (Ex. B), and Claim Form (Ex. C) attached to the Settlement Agreement; 5) Appointing Santosh Cherian as Representative of the Settlement Class; 6) Appointing Raina C. Borrelli of Strauss Borrelli PLLC as Settlement Class Counsel; 7) Scheduling a Final Approval Hearing to consider the entry of the final order and judgment approving the Settlement and the request for attorneys' fees, costs, expenses, and Plaintiff's service awards to be held at least 160 days after entry of the Preliminary Approval Order; and 8) Such other relief as the Court deems just and proper.

Dated: August 21, 2024              By: */s/ Raina C. Borrelli*
                                         Raina C. Borrelli (*pro hac vice*)
                                         STRAUSS BORRELLI PLLC
                                         One Magnificent Mile
                                         980 N. Michigan Avenue, Suite 1610
                                         Chicago IL, 60611
                                         Telephone: (872) 263-1100
                                         Facsimile: (872) 263-1109
                                         raina@straussborrelli.com

                                         James J. Bilsborrow (NY Bar # 519903)
                                         WEITZ & LUXENBERG, PC
                                         700 Broadway
                                         New York, NY 10003
                                         Telephone: (212) 558-5500
                                         jbilsborrow@weitzlux.com

                                         *Attorneys for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Raina Borrelli, hereby certify that on August 21, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 21st day of August, 2024.

STRAUSS BORRELLI PLLC

By: <u>*/s/ Raina Borrelli*</u>
    Raina Borrelli
    STRAUSS BORRELLI PLLC
    One Magnificent Mile
    980 N. Michigan Avenue, Suite 1610
    Chicago IL, 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109
    raina@straussborrelli.com