**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SANTOSH CHERIAN, on behalf of himself and all others similarly situated, <br><br>                 Plaintiff, <br><br> v. <br><br> MANIPAL EDUCATION AMERICAS, LLC, and AMERICAN UNIVERSITY OF ANTIGUA INC., <br><br>                 Defendants. | Case No. 1:24-cv-00404-JLR <br><br> Judge Jennifer L. Rochon <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL** |

# TABLE OF CONTENTS

I.    Introduction ........................................................................................................... 1

II.   Background ............................................................................................................ 1

   A.    Litigation History ............................................................................................ 1

   B.    Settlement Benefits ......................................................................................... 2

   C.    The Notice Program ........................................................................................ 3

   D.    Claims Administration ..................................................................................... 4

III.  Legal Standard ...................................................................................................... 4

IV.   Argument .............................................................................................................. 4

   A.    The Settlement Class satisfies Rule 23(a) and Rule 23(b)(3). ........................ 5

   B.    Final approval is appropriate under Rule 23(e). ............................................. 7

      1.    Class Counsel and the Plaintiff provided adequate representation. ................ 8

      2.    The Settlement was negotiated at arm's length. ........................................... 9

      3.    The Settlement provides adequate relief. ..................................................... 9

      4.    The Settlement treats Class Members equitably. ........................................ 11

   C.    Final approval is appropriate under the *Grinnell* factors. .......................... 11

      1.    The complexity, expense, and duration of the litigation. ............................ 12

      2.    The reaction of Class Members. ................................................................. 12

      3.    The stage of proceedings. .......................................................................... 13

      4.    The risks of establishing liability. .............................................................. 13

      5.    The risks of establishing damages. ............................................................ 14

      6.    The risks of maintaining the Class through the trial. .................................. 14

      7.    Defendants' ability to withstand a greater judgment. ................................. 14

      8.    The range of reasonableness of the Settlement. ......................................... 14

   D.    The notice program satisfied due process. .................................................... 15

V.    Conclusion ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Boudreaux v. Sys. E., Inc.*,
    No. 5:23-CV-1498, 2024 U.S. Dist. LEXIS 149294 (N.D.N.Y. Aug. 15, 2024)...............5, 6, 7

*Brent v. Advanced Med. Mgmt., LLC*,
    No. JKB-23-3254, 2024 U.S. Dist. LEXIS 227423 (D. Md. Dec. 13, 2024)...........................5

*Cruz v. Sal-Mark Rest. Corp.*,
    No. 1:17-CV-0815, 2019 U.S. Dist. LEXIS 13529 (N.D.N.Y. Jan. 28, 2019) ........................13

*Everetts v. Pers. Touch Holding Corp.*,
    No. 21-CV-02061, 2024 U.S. Dist. LEXIS 10994 (E.D.N.Y. Jan. 22, 2024)...................5, 6, 7

*Hyland v. Navient Corp.*,
    48 F.4th 110 (2d Cir. 2022) .........................................................................................12

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    No. 02-CV-5575, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) .............................13

*In re Canon United States Data Breach Litig.*,
    No. 20-CV-6239, 2023 U.S. Dist. LEXIS 206513 (E.D.N.Y. Nov. 15, 2023) ...........6, 7, 12, 14

*In re Christie's Data Breach Litig.*,
    No. 24-CV-4221, 2025 U.S. Dist. LEXIS 29862 (S.D.N.Y. Feb. 19, 2025) .....................5, 6, 7

*In re Emulsion (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    527 F. Supp. 3d 269 (E.D.N.Y. Mar. 15, 2021) ........................................................15

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
    No. 18-cv-8472, 2022 U.S. Dist. LEXIS 102805 (S.D.N.Y. June 8, 2022).......................11, 14

*In re Onix Grp., LLC Data Breach Litig.*,
    No. 23-2288, 2024 U.S. Dist. LEXIS 225686 (E.D. Pa. Dec. 13, 2024) ..................................13

*In re Waste Mgmt. Data Breach Litig.*,
    No. 1:21-cv-06199, 2024 U.S. Dist. LEXIS 48903 (S.D.N.Y. Mar. 15, 2024) .................5, 6, 7

*James v. China Grill Mgmt.*,
    No. 18-cv-455, 2019 U.S. Dist. LEXIS 72759 (S.D.N.Y. Apr. 30, 2019)................................10

*Lara v. Lubbock Heat Hospital, LLC*,
    No. 5:23-cv-00036 (N.D. Tex. July 31, 2024) ..........................................................................5

*Moses v. New York Times Co.*,
    79 F.4th 235 (2d Cir. 2023) ....................................................................2, 4, 5, 8, 9, 10, 11

iii

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) ...................................................................... 13

*Zimmerman v. Paramount Glob.*,
   No. 23-CV-2409, 2025 U.S. Dist. LEXIS 43617 (S.D.N.Y. Mar. 11, 2025) ........................... 13

**Rules**

Federal Rules of Civil Procedure, Rule 23 ........................................................ 4, 6, 7, 8, 9, 10, 11

I.    **Introduction**

On October 3, 2024, the Court granted Preliminary Approval of the Class Action Settlement, as set forth in a Settlement Agreement ("S.A.") between Plaintiff Santosh Cherian ("Plaintiff") and Defendants Manipal Education Americas, LLC, and American University of Antigua Inc. ("Defendants") (together the "Parties"). Pursuant to the Court's Order, the Settlement Administrator Simpluris issued notice to the Settlement Class on November 1, 2024. Since then, formal notice has reached 98.56% of the Settlement Class. Settlement Class Members have filed one hundred and eighty-seven (187) valid claims—which equates to a claims rate of 4.01%. Additionally, zero (0) Settlement Class Members have opted-out of the Settlement. And zero (0) Settlement Class Members have objected to the Settlement. As such, the Settlement satisfies Rule 23(e) and the *Grinnell* factors—and the Court should grant final approval of the Settlement.[1]

II.    **Background**

A.    **Litigation History**

Defendants own and operate the American University of Antigua College of Medicine, which is a for-profit private medical school in the Caribbean. Doc. 1, ¶¶ 14–15. Plaintiff is a former student of Defendants. *Id*. ¶¶ 40, 46. Plaintiff alleged that Defendants obtained his personally identifiable information ("PII") but then failed to use reasonable data security—which caused a data incident (the "Data Incident") from August 30, 2023, until September 6, 2023. *Id*. ¶¶ 3, 21. Thereafter, Plaintiff filed this class action lawsuit in this Court on January 18, 2024. Doc. 1.

Recognizing the benefits of timely resolution, the Parties began discussing the possibility of a class-wide settlement. Doc. 25, ¶¶ 6–7.  Thereafter, the Parties engaged in extensive arm's-

---

[1] Plaintiff filed a [Proposed] Order Granting Plaintiff's Motion for Final Approval of Class Action Settlement as "Exhibit E" to the Settlement Agreement. *See* Doc. 24-1, Ex. E.

length negotiations. *Id*. ¶¶ 8–10. Notably, the Parties agreed that they would not negotiate attorney fees or the service award until the core terms of the settlement were finalized (as to avoid any conflicts). *Id*. Thereafter, on August 21, 2024, Plaintiff moved the Court for preliminary approval. Docs. 23–25. On September 4, 2024, the Court held a preliminary fairness hearing and requested supplemental briefing regarding *Moses v. New York Times Co*., 79 F.4th 235 (2d Cir. 2023). Doc. 27. As requested, Plaintiff filed his Supplemental Brief in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement on September 18, 2024. *Id*. Thereafter, the Court granted preliminary approval of the Settlement on October 3, 2024. Doc. 32.

### B. Settlement Benefits

The Settlement provides substantial and timely relief to the Settlement Class—including both monetary relief and injunctive relief. Doc. 24-1 ("S.A."), ¶¶ 3.1–3.4. *First*, the Settlement provides up to $1,000 per person for ordinary losses (including $100 for lost time at a rate of $25 per hour for up to four hours). *Id*. ¶ 3.2(a-b). *Second*, the Settlement provides up to $5,000 per person for extraordinary losses. *Id*. ¶ 3.2(c). *Third*, the Settlement provides two-years of three-bureau credit monitoring with at least $1,000,000 in identity theft protection insurance. *Id*. ¶ 3.2(d). *Fourth*, the Settlement provides an alternative $25 cash payment (in lieu of claims for losses and credit monitoring). *Id*. ¶ 3.3. *Fifth*, the Settlement provides injunctive relief whereby Defendants are required to invest in and improve their data security systems.[2] *Id*. ¶ 3.34. *Sixth*, the Settlement also provides that Defendants shall pay for all notice costs, settlement administration costs, a service award, and attorney fees and costs. *Id*. ¶¶ 1.30, 4.1, 8.1, 8.2.

---

[2] Pursuant to the Settlement Agreement, Defendants provided Class Counsel with a confidential declaration—detailing the steps the Defendants took to improve their data security systems (and estimating the costs of those improvements). *See* Declaration of Raina C. Borrelli in Support of Plaintiff's Unopposed Motion for Final Approval ("Borrelli Decl."), ¶ 15. Thus far, Defendants have invested approximately $80,000 in upgrading their data security systems. *Id*.

### C.    The Notice Program

Pursuant to the Court's Order, the Settlement Administrator Simpluris issued notice to the Settlement Class—which was successful and reached 98.56% of the Settlement Class. *See* Declaration of Settlement Administrator Simpluris, Inc. Regarding Notice and Administration ("Simpluris Decl."), ¶¶ 9–11. Initially, Simpluris received a data file containing 4,868 Settlement Class Member names and mailing addresses. *Id*. ¶ 8. Simpluris removed 204 exact duplicate entries (which resulted in a final class list of 4,664 Settlement Class Members). *Id*. ¶ 9. Then, Simpluris updated the address data by using the United States Postal Service ("USPS") National Change of Address ("NCOA") database. *Id*. ¶10.

On November 1, 2024, Simpluris issued direct notice to the Settlement Class via U.S. Mail. *Id*. As of March 7, 2025, 384 notices were returned. *Id*. ¶ 11. Thereafter, Simpluris performed an advanced address search (i.e. skip tracing) on these addresses by using Accurint (a research tool owned by Lexis-Nexis). *Id*. Thus, Simpluris was able to re-send notice to 317 new addresses. *Id*. As a result, direct formal notice reached 98.56% of the Settlement Class (i.e., 4,597 received direct notice). *Id*. ¶¶ 9–11.

Additionally, Simpluris created (1) a Settlement-specific website, and (2) a Settlement-specific toll-free phone number. *Id*. ¶¶ 12–23. First, on November 1, 2024, Simpluris launched the website "www.AUAdatasettlement.com" which provided "important dates and deadlines, and Settlement related documents, including the Class Action Settlement Agreement and Release, the Motion for Preliminary Approval, the Preliminary Approval Order, and a downloadable version of the Notice." *Id*. ¶ 12. Second, on November 1, 2024, Simpluris instituted a toll-free telephone number wherein Settlement Class Members could find answers to common questions. *Id*. ¶ 13. Notably, the phone number "is accessible 24 hours a day, seven days a week, and will remain in

operation throughout the settlement administration." *Id.* As of March 7, 2025, the phone number received twenty-four (24) separate calls. *Id.*

### D.    Claims Administration

In total, Simpluris received one-hundred and eighty-eight (188) claim submissions. *Id.* ¶ 14. Therein, one-hundred and eighty-seven (187) were valid or partially valid (and only one claim was rejected as invalid). *Id.* In sum, 4.01% of the Settlement Class submitted valid and timely claims. *Id.*

## III.    Legal Standard

Final Approval is governed by Rule 23(e) which provides that a "district court may approve a settlement proposal that binds class members only 'after a hearing and on finding that it is fair, reasonable, and adequate.'" *Moses v. N.Y. Times Co*., 79 F.4th 235, 242 (2d Cir. 2023) (quoting Fed. R. Civ. P. 23(e)(2)). Historically, courts in the Second Circuit have "applied the nine factors set out in *Grinnell*" to "evaluate the fairness, reasonableness, and adequacy of a class settlement[.]" *Id.* But in 2018, Congress revised Rule 23 "to include a list of four primary procedural considerations and substantive qualities that should always matter to the decision whether to approve a settlement proposal." *Id.* at 242–43 (cleaned up).

Thereafter, in *Moses*, the Second Circuit explained that "Rule 23(e)(2)'s procedural factors prohibit courts from applying a presumption of fairness to proposed settlements arising from an arms-length agreement" and that courts "must consider the four factors outlined in Rule 23(e)(2) holistically[.]" *Id.* at 243. However, the Second Circuit was clear that "the revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement." *Id.*

## IV.    Argument

4

Final approval of the Settlement is proper under Rule 23(a), Rule 23(b)(3), the Rule 23(e)(2) analysis, and the traditional *Grinnell* factors. *See Moses*, 79 F.4th at 242–46. As explained below, the Settlement is procedurally and substantively fair, reasonable, and adequate. *See also* Borrelli Decl. ¶ 2. Moreover, the claims rate of 4.01% meets—and even exceeds—the standard rate in analogous data breach class actions. *See, e.g., Lara v. Lubbock Heat Hospital, LLC*, No. 5:23-cv-00036 (N.D. Tex. July 31, 2024) (granting final approval of a claims-made settlement with a claims rate of 0.4%); *Brent v. Advanced Med. Mgmt., LLC*, No. JKB-23-3254, 2024 U.S. Dist. LEXIS 227423, *11 (D. Md. Dec. 13, 2024) ("The Court finds the claims rate of 3.27% to be modest, although it compares favorably to those breach-related class actions cited by Plaintiffs."). Thus, the Court should grant final approval.

## A.       The Settlement Class satisfies Rule 23(a) and Rule 23(b)(3).

Previously, the Court found that the Settlement Class satisfied Rule 23(a) and Rule 23(b)(3). *See* Doc. 32, at 2. Since then, there has been no intervening change in law or fact to disturb the Court's initial finding. Borrelli Decl. ¶ 24. And as explained below, "the Settlement Class still satisfies the Rule 23 requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority." *Id*. ¶ 29.

***Numerosity*** is satisfied because there are 4,664 Settlement Class Members. Simpluris Decl. ¶ 9; *see also In re Christie's Data Breach Litig.*, No. 24-CV-4221, 2025 U.S. Dist. LEXIS 29862, at *15 (S.D.N.Y. Feb. 19, 2025) (finding numerosity satisfied in a data breach class action); *Boudreaux v. Sys. E., Inc*., No. 5:23-CV-1498, 2024 U.S. Dist. LEXIS 149294, at *5 (N.D.N.Y. Aug. 15, 2024) (same); *Everetts v. Pers. Touch Holding Corp.*, No. 21-CV-02061, 2024 U.S. Dist. LEXIS 10994, at *3 (E.D.N.Y. Jan. 22, 2024) (same); *In re Waste Mgmt. Data Breach Litig.*, No. 1:21-cv-06199, 2024 U.S. Dist. LEXIS 48903, at *3 (S.D.N.Y. Mar. 15, 2024) (same*); In re Canon*

*United States Data Breach Litig.*, No. 20-CV-6239, 2023 U.S. Dist. LEXIS 206513, at *8 (E.D.N.Y. Nov. 15, 2023) (same).

     **Commonality** is satisfied because there are many "questions of law or fact common to the class" including "if Defendants had a duty to use reasonable care" and "if Defendants failed to implement and maintain reasonable security procedures" and "if the Data Breach caused Plaintiff and the Class injuries[.]" Fed. R. Civ. P. 23(a)(2); Doc. 1 ("Compl."), ¶ 89. These questions establish commonality. *See, e.g., In re Christie's*, 2025 U.S. Dist. LEXIS 29862, at *15 (finding commonality satisfied in a data breach class action); *Boudreaux*, 2024 U.S. Dist. LEXIS 149294, at *5 (same); *Everetts*, 2024 U.S. Dist. LEXIS 10994, at *3 (same); *In re Waste Mgmt.*, 2024 U.S. Dist. LEXIS 48903, at *3 (same); *In re Canon*, 2023 U.S. Dist. LEXIS 206513, at *8 (same).

     **Typicality** is satisfied and "the claims or defenses of the representative parties are typical of the claims or defenses of the class" because the claims and defenses of Plaintiff and the Settlement Class all "arise[] from the same Data Breach" and "the same alleged violations by Defendant[.]" Fed. R. Civ. P. 23(a)(3); Compl. ¶ 89. These similarities establish typicality. *See, e.g., In re Christie's*, 2025 U.S. Dist. LEXIS 29862, at *15 (finding typicality satisfied in a data breach class action); *Boudreaux*, 2024 U.S. Dist. LEXIS 149294, at *5 (same); *Everetts*, 2024 U.S. Dist. LEXIS 10994, at *3 (same); *In re Waste Mgmt.*, 2024 U.S. Dist. LEXIS 48903, at *3 (same); *In re Canon*, 2023 U.S. Dist. LEXIS 206513, at *8–9 (same).

     **Adequacy** is satisfied because Class Counsel and Plaintiff "fairly and adequately protect[ed]the interests of the class." Fed. R. Civ. P. 23(a)(4). Specifically, "Ms. Borrelli has significant experience in data privacy litigation" and "Plaintiff Santosh Cherian . . . reviewed the complaint for accuracy, met with Class Counsel to answer numerous questions . . . provided information to assist in settlement negotiations" and "was willing to further serve as a class

representative by being deposed and testifying at trial." Borrelli Decl. ¶¶ 3–8. These facts establish adequacy. *See, e.g., In re Christie's*, 2025 U.S. Dist. LEXIS 29862, at *16 (finding adequacy satisfied in a data breach class action); *Boudreaux*, 2024 U.S. Dist. LEXIS 149294, at *5 (same); *Everetts*, 2024 U.S. Dist. LEXIS 10994, at *3 (same); *In re Waste Mgmt.*, 2024 U.S. Dist. LEXIS 48903, at *3 (same); *In re Canon*, 2023 U.S. Dist. LEXIS 206513, at *8–9 (same).

***Predominance*** is satisfied and "questions of law or fact common to class members predominate" because common questions (e.g., involving the data security of Defendants, the duties owed by Defendants, and the injuries of the Settlement Class), all predominate over individualized questions. Fed. R. Civ. P. 23(b)(3); Compl. ¶ 89. These common questions establish predominance. *See, e.g., In re Christie's*, 2025 U.S. Dist. LEXIS 29862, at *16 (finding predominance satisfied in a data breach class action); *Boudreaux*, 2024 U.S. Dist. LEXIS 149294, at *5 (same); *Everetts*, 2024 U.S. Dist. LEXIS 10994, at *3 (same); *In re Waste Mgmt.*, 2024 U.S. Dist. LEXIS 48903, at *3 (same); *In re Canon*, 2023 U.S. Dist. LEXIS 206513, at *8–9 (same).

***Superiority*** is satisfied and "a class action is superior to other available methods" because individualized litigation of 4,664 claims would be impracticable and because "the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties." Fed. R. Civ. P. 23(b)(3); Compl. ¶ 90. These considerations establish superiority. *See, e.g., In re Christie's*, 2025 U.S. Dist. LEXIS 29862, at *16 (finding superiority satisfied in a data breach class action); *Boudreaux*, 2024 U.S. Dist. LEXIS 149294, at *5 (same); *Everetts*, 2024 U.S. Dist. LEXIS 10994, at *3 (same); *In re Waste Mgmt.*, 2024 U.S. Dist. LEXIS 48903, at *3 (same); *In re Canon*, 2023 U.S. Dist. LEXIS 206513, at *8–9 (same).

**B.    Final approval is appropriate under Rule 23(e).**

Final approval is appropriate under Rule 23(e). *First*, Rule 23(e)(2) provides two "procedural" factors which are whether "(A) the class representatives and class counsel have adequately represented the class" and "(B) the proposal was negotiated at arm's length[.]" *Second*, Rule 23(e)(2) provides two "substantive" factors which are whether "(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3) ; and (D) the proposal treats class members equitably relative to each other."

### 1.    Class Counsel and the Plaintiff provided adequate representation.

The procedural factor Rule 23(e)(2)(A) supports final approval because Class Counsel and the Plaintiff provided adequate representation. *Moses*, 79 F.4th at 243; Borrelli Decl. ¶ 3.  For one, Class Counsel has substantial experience in complex litigation—including a specific expertise in data breach class actions. *Id*. ¶ 4. For one, "Ms. Borrelli has significant experience in data privacy litigation and is currently litigating more than one hundred data breach cases in courts around the country as lead counsel or co-counsel on behalf of millions of data breach victims[.]" *Id*. ¶ 5. Additionally, "[f]rom the start, the Parties agreed they would not negotiate Proposed Class Counsel's attorney fees or Plaintiff's service award until they agreed on the settlement agreement's core terms, thus avoiding conflict between Plaintiff and the Settlement Class." *Id*. ¶ 6.

Moreover, "Plaintiff Santosh Cherian was an adequate class representative because he, *inter alia*, provided facts for the complaint, reviewed the complaint for accuracy, met with Class Counsel to answer numerous questions, remained in contact with Class Counsel regarding the progress of the case, provided information to assist in settlement negotiations, and remained

available throughout the entire litigation and settlement process." *Id.* ¶ 7. And "Plaintiff was willing to further serve as a class representative by being deposed and testifying at trial." *Id.* ¶ 8. Thus, this factor supports final approval.

### 2.      The Settlement was negotiated at arm's length.

The procedural factor Rule 23(e)(2)(B) supports final approval because the Settlement was negotiated at arm's length. *Moses*, 79 F.4th at 243; Borrelli Decl. ¶ 8. Notably, the "negotiations only began after the Parties engaged in informal discovery which enabled the Parties to better evaluate the strengths and weaknesses of the underlying claims and defenses." *Id.* ¶ 9. And "while the negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with both parties forcefully advocating the position of their respective clients over approximately four months." *Id.* ¶ 10. Moreover, "to avoid any conflict of interest, the Parties agreed to not negotiate attorney fees or the service award until after the core terms of the Settlement were agreed upon." *Id.* ¶ 11. Thus, this factor supports final approval.

### 3.      The Settlement provides adequate relief.

The substantive factor Rule 23(e)(2)(C) supports final approval because the relief provided by the Settlement is adequate—and aligns with those in analogous data breach class action settlements. *Moses*, 79 F.4th at 243; Borrelli Decl. ¶ 12. As explained above, this factor includes four separate subfactors for the court to "tak[e] into account." *See* Rule 23(e)(2)(C). Here, three of these subfactors support final approval (and one subfactor is neutral).

***First***, Rule 23(e)(2)(C)(i) supports final approval because trial and/or appeal would be costly, risky, and would delay relief to Class Members. *Moses*, 79 F.4th at 243. Indeed, "Plaintiff faced serious risks prevailing on the merits, including proving causation, as well as risks at class certification and at trial, and surviving appeal." Borrelli Decl. ¶ 13. Thus, "a settlement today not

only avoids the risks of continued litigation, but it also provides benefits to the Settlement Class Members now as opposed to after years of risky litigation." *Id*. ¶ 14. Thus, Rule 23(e)(2)(C)(i) supports final approval.

**Second**, Rule 23(e)(2)(C)(ii)  supports final approval because the proposed methods for distributing relief and processing claims are effective. *Moses*, 79 F.4th at 243. Here, the relief is tailored to the specific injuries that Settlement Class Members incurred (i.e., compensation for ordinary losses, lost time, extraordinary losses, and credit monitoring). S.A. ¶ 3.1. Such tailored relief is "effective and aligns with the relief provided by analogous data breach class action settlements." Borrelli Decl. ¶ 15. Thus, Rule 23(e)(2)(C)(ii) supports final approval.

**Third**, Rule 23(e)(2)(C)(iii) supports final approval because the proposed award of attorney fees is reasonable. *Moses*, 79 F.4th at 243. Here, Class Counsel requested attorney fees and costs of $136,500 which is reasonable—especially because "Class Counsel undertook this case on a wholly contingent basis which posed the substantial risk of zero recovery." Borrelli Decl. ¶ 16.  At the time of submitting Plaintiff's Unopposed Motion for Attorney Fees, Costs, and Service Award, Class Counsel's lodestar was 102.30 hours and $58,687.50. *See* Doc. 37, at 3. However, since then, Class Counsel's lodestar has increased to 125.2 hours and $69,677.50. Borrelli Decl. ¶ 17. As a result, the requested fee award now equates to a modest lodestar multiplier of 1.95 (exclusive of costs, which, if included, would further decrease the multiplier). Borrelli Decl. ¶ 17; *see also James v. China Grill Mgmt.*, No. 18-cv-455, 2019 U.S. Dist. LEXIS 72759, at *8 (S.D.N.Y. Apr. 30, 2019) (collecting cases with multipliers between 2 and 4.9). As such, the Settlement is fair, reasonable, and adequate upon consideration of the requested attorney fees. *See Moses*, 79 F.4th at 246. Thus, Rule 23(e)(2)(C)(iii) supports final approval.

*Fourth*, Rule 23(e)(2)(C)(iv) is neutral toward final approval because there is no agreement that requires identification. *Moses*, 79 F.4th at 243; Borrelli Decl. ¶ 18.

### 4.    The Settlement treats Class Members equitably.

The substantive factor Rule 23(e)(2)(D)  supports final approval because the Settlement treats Class Members equitably. *Moses*, 79 F.4th at 243. For example, in *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, the court granted final approval of a data breach settlement that provided compensation for out-of-pocket losses or an alternative cash payment. No. 18-cv-8472, 2022 U.S. Dist. LEXIS 102805, at *28 (S.D.N.Y. June 8, 2022). Therein, the court held that "[t]he plan of allocation compensates members of the class equitably relative to each other." *Id*. Likewise, this Settlement treats Class Members equitably—after all, the Settlement also provides compensation for out-of-pocket losses or an alternative cash payment. Borrelli Decl. ¶ 19. Finally, the modest service award of $2,500 is appropriate under Second Circuit precedent. *Moses*, 79 F.4th at 239, 253 (explaining that "we reiterate our holding . . . that incentive awards are not *per se* unlawful" and that "Rule 23(e)(2)(D) . . . is harmonious with, and promoted by, our clear precedent that permits district courts to approve fair and appropriate incentive awards to class representatives"). As such, the Settlement is fair, reasonable, and adequate upon consideration of the requested service award. *Id.* at 246. Thus, this factor supports final approval.

### C.    Final approval is appropriate under the *Grinnell* factors.

In the Second Circuit, courts apply the nine *Grinnell* factors when evaluating the fairness, reasonableness, and adequacy of a class settlement. *Moses*, 79 F.4th at 242. The nine *Grinnell* factors are "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of

maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id*. at 242 n.3 (quoting *Hyland v. Navient Corp*., 48 F.4th 110, 121 (2d Cir. 2022)). As explained below, eight of the nine factors support approval (and one factor is neutral). Thus, on balance, the *Grinnell* factors support final approval.

### 1.    The complexity, expense, and duration of the litigation.

The first *Grinnell* factor supports final approval because further litigation would be complex, expensive, and protracted. 495 F.2d at 463; Borrelli Decl. ¶ 20. Indeed, "data breach litigation raises complex issues of damages and causation which can impede (or even prevent) plaintiffs from achieving success on the merits." *Id*. Critically, "a settlement today avoids these issues and provides timely and tailored relief to the Settlement Class." *Id*. ¶ 21. Thus, this factor supports final approval. *See In re Canon United States Data Breach Litig*., No. 20-CV-6239, 2024 U.S. Dist. LEXIS 138499, *30 (E.D.N.Y. Aug. 5, 2024) (explaining that "data breach litigation is complex and largely undeveloped").

### 2.    The reaction of Class Members.

The second *Grinnell* factor supports final approval because the Settlement Class has reacted favorably to the Settlement. 495 F.2d at 463; Simpluris Decl. ¶¶ 14–23. For one, Settlement Class Members submitted one-hundred and eighty-seven (187) valid claims—which equates to a claims rate of 4.01%. *Id*. ¶ 14. Moreover, Settlement Class Members submitted zero (0) opt-out requests and zero (0) objections to the Settlement. *Id*. ¶¶ 20–23. This reaction is significant because "the fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness." *Cruz v. Sal-Mark Rest. Corp*., No. 1:17-CV-0815, 2019 U.S. Dist. LEXIS

13529, *12 (N.D.N.Y. Jan. 28, 2019) (cleaned up) (quoting *Wright v. Stern*, 553 F. Supp. 2d 337, 344–45 (S.D.N.Y. 2008)). Thus, this factor strongly supports final approval.

### 3.    The stage of proceedings.

The third *Grinnell* factor supports final approval because "Class Counsel engaged in substantial pre-suit discovery and the Parties exchanged informal discovery—including, *inter alia*, information about the scope of the Data Breach, the size of the Settlement Class, and Defendant's response to the Data Breach." 495 F.2d at 463; Borrelli Decl. ¶ 22. Thus, the Parties were able to objectively evaluate the strengths and weaknesses of the underlying claims and defenses. Borrelli Decl. ¶ 23. Thus, this factor supports final approval because Plaintiff "obtained a sufficient understanding of the case to gauge the strengths and weaknesses of [his] claims and the adequacy of the settlement." *Zimmerman v. Paramount Glob*., No. 23-CV-2409, 2025 U.S. Dist. LEXIS 43617, *17 (S.D.N.Y. Mar. 11, 2025) (quoting *In re AOL Time Warner, Inc. Sec. & ERISA Litig*., No. 02-CV-5575, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006)).

### 4.    The risks of establishing liability.

The fourth *Grinnell* factor supports final approval because establishing causation and liability is difficult in data breach class actions. 495 F.2d at 463; Borrelli Decl. ¶ 25; *see also In re Onix Grp., LLC Data Breach Litig*., No. 23-2288, 2024 U.S. Dist. LEXIS 225686, *27 (E.D. Pa. Dec. 13, 2024) ("[T]here is a risk of establishing liability, and in turn, damages, because this case involves a number of open questions, including whether Defendant owed a duty to the class to safeguard sensitive information, whether Defendant breached that duty, whether the compromised information was actually viewed by bad actors . . . whether Defendant's conduct was the proximate cause of the breach, and the extent to which the class is entitled to recovery."). Thus, this factor supports final approval.

### 5.    The risks of establishing damages.

The fifth *Grinnell* factor supports final approval because establishing damages is difficult in data breach cases. 495 F.2d at 463; Borrelli Decl. ¶ 25. In such cases, "Plaintiffs likely would have encountered obstacles to establishing class-wide damages, particularly due to the inherent uncertainty of quantifying injury in a data breach case." *In re Canon*, 2024 U.S. Dist. LEXIS 138499, *30. Thus, this factor supports final approval.

### 6.    The risks of maintaining the Class through the trial.

The sixth *Grinnell* factor supports final approval because achieving—and maintaining— class certification is acutely difficult for data breach cases. 495 F.2d at 463; Borrelli Decl. ¶ 26. Moreover, "no data breach class action has reached the trial stage" and "the trial risk is difficult to quantify and raises the uncertainty involved in the case[.]" *In re Canon*, 2024 U.S. Dist. LEXIS 138499, *30. Thus, this factor supports final approval.

### 7.    Defendants' ability to withstand a greater judgment.

The seventh *Grinnell* factor is neutral because the Defendants' ability to withstand a greater judgment is not at issue. 495 F.2d at 463; Borrelli Decl. ¶ 27.

### 8.    The range of reasonableness of the Settlement.

The eighth and ninth *Grinnell* factors support final approval because the Settlement is reasonable when balancing the "best possible recovery" with "all the attendant risks of litigation." 495 F.2d at 463; Borrelli Decl. ¶ 28. For example, in *In re Hudson's Bay*, the court granted final approval of a data breach settlement that provided compensation for out-of-pocket losses or an alternative cash payment. 2022 U.S. Dist. LEXIS 102805, at *28 (S.D.N.Y. June 8, 2022). Therein, the court noted "the difficulties of estimating a maximum range of likely recovery in a data breach case, given that no such claims have proceeded to jury verdict." *Id*. at *64. Thus, the court held

that compensation for out-of-pocket losses or an alternative cash payment was "consistent with similar data-breach class action settlements that have been brought throughout the country" and was "fair, reasonable and adequate from the standpoint of the individual class members." *Id*. Likewise, the Settlement here provides tailored monetary relief which is fair, reasonable and adequate from the standpoint of the individual class members. Borrelli Decl. ¶ 28. Thus, these factors support final approval.

### D. The notice program satisfied due process.

The Court should approve the notice program—which was successful and provided direct notice to 98.56% of the Settlement Class. Simpluris Decl.¶¶ 9–11; *see also In re Emulsion (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 527 F. Supp. 3d 269, 273 (E.D.N.Y. Mar. 15, 2021) (noting that "a notice plan that reaches between 70 and 95 percent of the class is reasonable"). Moreover, as evidenced by the Simpluris Declaration (and the attached Exhibits B, C, and D), the notice program provided Settlement Class Members with all the information required by due process, Rule 23(e), and the Court's Preliminary Approval Order. *See* Simpluris Decl. at 14–34. Thus, the Court should find that the Notice Program was sufficient and reasonable.

## V.    Conclusion

For the foregoing reasons, Plaintiff Santosh Cherian respectfully requests that this Court grant final approval, certify the Settlement Class, and enter the proposed final approval order.


Dated: April 2, 2025                    By: */s/ Raina C. Borrelli*
                                            Raina C. Borrelli
                                            STRAUSS BORRELLI PLLC
                                            980 N. Michigan Avenue, Suite 1610
                                            Chicago, IL 60611
                                            Telephone: (872) 263-1100
                                            Facsimile: (872) 263-1109
                                            raina@straussborrelli.com

James J. Bilsborrow (NY Bar # 519903)
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Telephone: (212) 558-5500
jbilsborrow@weitzlux.com

*Attorneys for Plaintiffs and the Settlement Class*

## CERTIFICATE OF SERVICE

I, Raina C. Borrelli, hereby certify that on April 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 2nd day of April, 2025.

By: */s/ Raina C. Borrelli*
Raina C. Borrelli
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

17